**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**QUICK RESPONSE
COMMERCIAL DIVISION, LLC,**
 as Assignee of Charbonneau
Properties, LLC,

                            **Plaintiff,**

                    v.

**CINCINNATI INSURANCE
COMPANY,**

                            **Defendant.**

**1:14-cv-779
(GLS/DEP)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Office of Frank M. Putorti, Jr.<br>1338 Union Street<br>Schenectady, NY 12308-3008 | FRANK M. PUTORTI, JR., ESQ.<br>ANDREW J. HEALEY, ESQ. |
| **FOR THE DEFENDANT:**<br>Litchfield, Cavo Law Firm<br>420 Lexington Avenue, Suite 2104<br>New York, NY 10170 | VINCENT J. VELARDO, ESQ.<br>EDWARD FOGARTY, JR., ESQ. |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Quick Response Commercial Division, LLC, as assignee of

Charbonneau Properties, LLC, the insured, commenced this diversity action against defendant Cincinnati Insurance Company, the insurer, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (*See generally* Compl., Dkt. No. 1, Attach. 1 at 4-14.) Pending is Cincinnati's motion for summary judgment. (Dkt. No. 18.) For the reasons that follow, the motion is granted in part and denied in part and the case is stayed pending completion of the appraisal process.

## II. Background

### A. Facts[1]

Cincinnati issued a commercial property insurance policy to Charbonneau Properties, LLC which was effective from February 28, 2012 to February 28, 2013. (Dkt. No. 18, Attach 5 at 25-72; Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 18, Attach. 1 at 2-6.) On August 9, 2012, Charbonneau sustained fire, smoke, and other damage to its property located at 2831 Route 9, Malta, Saratoga County, New York. (Def.'s SMF ¶¶ 2-3.) Shortly thereafter, Charbonneau entered into a contract with Quick Response for Quick Response "to proceed with its recommended procedures to preserve, protect and secure the property."

---

[1] Unless otherwise noted, the facts are not in dispute.

(*Id.* ¶ 4.) The contract between Charbonneau and Quick Response provided that 18% annual interest would be assessed against Charbonneau on unpaid invoices, and that Charbonneau would be responsible for attorney's fees expended in pursuing the payment of invoices. (Pl.'s SMF ¶ 37, Dkt. No. 25 at 6-12; Dkt. No. 18, Attach 10 at 2.)

After meeting on September 13, 2012 with Charbonneau and Quick Response to discuss the loss suffered by Charbonneau, Cincinnati made several requests to Quick Response for estimates of the damage. (Def.'s SMF ¶¶ 6-7; Pl.'s SMF ¶ 6.) In March 2013, seven months after Charbonneau sustained the loss at its property, Quick Response provided an invoice to Cincinnati for $1,761,857.87. (Def.'s SMF ¶ 7.) According to Cincinnati, because this estimate included work outside of the scope of damage that the parties agreed to at their September 13, 2012 meeting, as well as work done for another tenant at the building, it retained a restoration remediation company to review and audit the claim. (*Id.* ¶ 8.) Subsequently, this restoration remediation company provided an audited invoice of $860,036.81, and Cincinnati paid at least $859,036.81 to Quick

Response.[2]  (*Id.* ¶¶ 9-10; Pl.'s SMF ¶ 10.)

When the parties failed to reach agreement on an amount to settle the claim, Cincinnati issued a "demand for appraisal" pursuant to the policy.  (Def.'s SMF ¶¶ 11-13, Pl.'s SMF ¶ 12.)  Under the policy, if Cincinnati and the insured disagree on the value of the property, the amount of net income and operating expense, or the amount of the loss,

> either may make written demand for an appraisal of the 'loss'.  In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within [twenty] days of such demand. . . . The two appraisers will select an umpire. . . . The appraisers will state separately the value of the property, the amount of [n]et [i]ncome and operating expense, and the amount of 'loss'.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

(Def.'s SMF ¶ 17; Dkt. No. 18, Attach. 6 at 18-19.)  Quick Response rejected Cincinnati's demand for appraisal on several occasions, despite Cincinnati's follow-up letter denoting May 30, 2014 as the deadline, under the terms of the policy, for Quick Response to name its appraiser.  (*Id.* ¶¶ 14-15; Pl.'s SMF ¶ 14.)

---

[2] The parties dispute the total amount Cincinnati has paid Quick Response on this claim.  (Def.'s SMF ¶ 10; Pl.'s SMF ¶ 10.)

4

## B. Procedural History

On June 12, 2014, Quick Response commenced this action in New York State Supreme Court, Saratoga County, alleging (1) breach of contract for failure to cover the cost of repairs, and (2) breach of the implied covenant of good faith and fair dealing for failure to "fairly, timely and accurately adjust the claim." (Compl. ¶¶ 49-79.) Quick Response seeks recovery of the amount owed on the invoice, the 18% interest accruing on that amount under the Charbonneau-Quick Response contract, and any attorney's fees and costs associated with litigating the matter. (*Id.* at 13-14.) Cincinnati removed the action to this court, (Dkt. No. 1), and filed an answer with a counterclaim seeking an order compelling appraisal pursuant to the terms of the policy, (Dkt. No. 7). Despite a February 2015 discovery deadline, Cincinnati filed its now-pending motion for summary judgment in September 2014.[3] (Dkt. No. 18.)

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the

---

[3] Subsequently, discovery in this action was stayed pending a decision from the court concerning Cincinnati's motion for summary judgment. (Dkt. No. 22.)

standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Demand for Appraisal

First, Cincinnati argues that, because Quick Response failed to comply with the policy provisions with respect to the demand for appraisal, its claims must be dismissed. (Dkt. No. 18, Attach. 1 at 7-9.) Further, Cincinnati contends that, under New York Insurance Law, it is entitled to an order compelling appraisal. (*Id.* at 9-10.) On the other hand, Quick Response asserts that because there are issues of fact concerning the scope of the work it performed, Cincinnati is not entitled to an order directing appraisal. (Dkt. No. 25 at 13-16.) The court agrees with Cincinnati that the parties' dispute is subject to appraisal.

"'New York public policy favors an appraisal proceeding over a trial on damages.'" *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 199 (2d Cir. 2012) (quoting *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, No. 01 Civ. 9291, 2004 WL 2979790, at *3 (S.D.N.Y. Dec. 1, 2004)). "This pro-appraisal policy is reflected in the November 2014 amendment to

6

Section 3408(c) of the New York Insurance Law," *Zarour v. Pac. Indem. Co.*, No. 15-CV-2663, 2015 WL 4385758, at *3 (S.D.N.Y. July 6, 2015), which provides that

> [a]n appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause of the insurance policy.

N.Y. Ins. Law § 3408(c) (McKinney 2014). However, "an appraisal shall not determine whether the policy actually provides coverage for any portion of the claimed loss or damage." *Id.* This is because "the scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the amount of loss for which an insurer is liable." *Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

Here, the dispute between the parties concerns Quick Response's performance of work which exceeded the original scope of damage that the parties agreed to at their September 13, 2012 meeting. (Def.'s SMF ¶ 8; Dkt. No. 18, Attach. 6 at 60-61.) According to Quick Response, the agreed scope of damage was incomplete because it was determined only upon

what was visible to the naked eye at that time, without the benefit of a professional consultant concerning necessary code upgrades and structural repairs. (Pl.'s SMF ¶¶ 6, 28.) Quick Response contends that electrical and HVAC work it performed on the property, as well as work it performed in the kitchen and bathrooms, was "reasonable, necessary and required to remediate the property and allow for a Certificate of Occupancy," contrary to Cincinnati's contention that such work was not required and not within the agreed upon scope of damage. (*Id.* ¶¶ 25-27.) Further, Quick Response contests Cincinnati's exclusion of the length of time that Quick Response's equipment was on site during the arson investigation conducted after the August 9, 2012 fire, and work Quick Response performed "to stabilize the building" from Cincinnati's estimate, due to Cincinnati's assertion that these were outside the agreed scope of loss. (*Id.* ¶¶ 20-22.) Quick Response also complains that the "means and methods for the dry out of the building" contemplated in Cincinnati's estimate differs from the work Quick Response actually performed. (*Id.* ¶ 35.)

Ultimately, there is no contention that Cincinnati has denied its liability for damages related to the August 9, 2012 fire, and Quick

8

Response does not point to any policy provisions that need to be interpreted by the court. *See Amerex Grp.*, 678 F.3d at 205 ("[A]n appraiser may not resolve coverage disputes or legal questions regarding the interpretation of the policy."). Rather, the parties dispute the extent of work required to repair the damage caused by the fire and the necessary methods of such repair. These disputes, related to the extent and amount of the damage to the insured property, are factual questions that fall squarely within the scope of the policy's appraisal clause. *See Zarour*, 2015 WL 4385758, at *3; *see also Amerex Grp.*, 678 F.3d at 206 (explaining that apportioning damage causation is an issue properly subject to appraisal, because it is essentially a factual question to be resolved by making factual judgments about events in the world, not legal analyses of the meaning of the insurance contract); *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, No. 12-CV-15686, 2014 WL 1652201, at *5-6 (E.D. Mich. Apr. 23, 2014) (approvingly citing *Amerex Grp.*, and holding that a dispute regarding the necessary repairs to reopen a building and length of time it should have taken to make those repairs goes to the amount of loss, which falls squarely within the ambit of an appraisal); *Williamson v. Chubb Indem. Ins. Co.*, No. 11-cv-6476, 2012 WL 760838, at

*4 (E.D. Pa. Mar. 8, 2012) (after noting the "well-established public policy of Pennsylvania encourag[ing] the settlement of disputes about the amount of loss by appraisal," concluding that a disagreement over the necessary repairs and methods of repair from a covered loss are subject to appraisal because they represent a dispute as to amount of loss, not as to coverage).

Accordingly, because the parties dispute the extent and dollar value of the loss, and not the scope of coverage provided by the policy, Quick Response was required to comply with the policy's appraisal provisions. *See* N.Y. Ins. Law § 3408(c). As such, Cincinnati's motion for summary judgment is granted to the extent that it seeks to compel appraisal.[4] However, because Quick Response's claim for consequential damages, discussed below, is not subject to appraisal, this case is stayed pending completion of the appraisal process.

## B. Consequential Damages

Cincinnati next argues that Quick Response cannot maintain its claim for consequential damages because such damages were not contemplated

---

[4] Although Cincinnati did not seek summary judgment on its counterclaim, it follows that the counterclaim is granted to the extent that it seeks to compel appraisal. (Dkt. No. 7 at 13-19.)

by the parties at the time the policy was issued. (Dkt. No. 18, Attach. 1 at 10-15.) Quick Response counters that because it was reasonable and foreseeable at the time Cincinnati issued the insurance policy to Charbonneau that Charbonneau might hire a contractor to remediate and repair a covered loss and would enter into a contract requiring it to pay interest and attorney's fees if the contractor was not timely paid, Quick Response is entitled to recover consequential damages consisting of 18% interest on the unpaid balance owed to it and reasonable attorney's fees, as provided in the Quick Response-Charbonneau contract. (Dkt. No. 25 at 16-21.) Further, Quick Response requests that, if the court issues an order compelling appraisal, the court also issue an order to stay this action pending completion of the appraisal process because the issues of attorney's fees and interest are not subject to appraisal. (Dkt. No. 25 at 16.)

Under New York law, consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context. *See Zarour*, 2015 WL 4385758, at *5; *Gauthier v. Countryway Ins. Co.*, 100 A.D.3d 1062, 1063 (3d Dep't 2012). Consequential damages "are in addition to the losses caused by a

11

calamitous event (i.e., fire or rain) and include those additional damages caused by [an insurer]'s injurious conduct[—]in this case, the insurer's failure to timely investigate, adjust and pay the claim." *Connolly v. Peerless Ins. Co.*, 873 F. Supp. 2d 493, 506 (E.D.N.Y. 2012). In order to be recoverable, the damages must have been "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203 (2008) (internal quotation marks and citations omitted). "To determine whether consequential damages were reasonably contemplated by the parties, courts look to 'the nature, purpose and particular circumstances of the contract known by the parties.'" *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 173 (E.D.N.Y. 2014) (quoting *Bi–Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192 (2008)). Courts also look at "'what liability the [insurer] fairly may be supposed to have assumed consciously, or to have warranted the [insured] reasonably to suppose that it assumed, when the contract was made.'" *Id.* (quoting *Bi-Economy*, 10 N.Y.3d at 193). Consequential damages "must be proximately caused by the breach and must be proven by the party seeking them." *Bi–Economy*, 10 N.Y.3d at 192-93 (internal quotation

marks and citation omitted).

Cincinnati contends that, because it was not a party to the Quick Response-Charbonneau contract, and the claim for consequential damages is not supported by any of the provisions of the policy, it did not contemplate such damages as the probable result of a breach at the time it issued Charbonneau the policy. (Dkt. No. 18, Attach. 1 at 10-15.) In response, Quick Response submits the affidavit of Robert Serafini, a current employee of Quick Response, and a former claims adjuster with Fort Orange Claims Service. (Dkt. No. 25, Attach. 2.) According to Serafini, "[t]he majority of times when a . . . property owner suffers a covered loss under an insurance policy they will hire adjusters or contractors to assist with the claim and to remediate and repair damage to the property they own." (*Id.* ¶ 6.) Further, in his experience as a claims adjuster, Serafini was aware that "[these c]ontractors and vendors will require the insured to sign contracts[, which] include provisions for the payment of attorney fees and interest on unpaid balances for the work . . . performed," typically in the range of 12-18% per year. (*Id.* ¶¶ 7, 9.) Moreover, Quick Response contends that depositions of Cincinnati's claims adjusters, including Christine Snyder, Cincinnati's claims adjuster

13

for the loss at issue here, will show that these damages were foreseen by Cincinnati at the time it issued Charbonneau the policy. (Dkt. No. 25 at 18-19.)

Ultimately, it cannot be said as a matter of law that Cincinnati did not foresee and contemplate the consequential damages sought by Quick Response. *See Whiteface Real Estate Dev. & Constr., LLC v. Selective Ins. Co. of Am.*, No. 08-cv-24, 2010 WL 2521794, at *5 (N.D.N.Y. June 16, 2010) (holding that a reasonable factfinder could conclude that the interest paid on a loan an insured took out to cover reconstruction costs, as well as attorney's fees and costs, were reasonably contemplated by the parties and necessary to return the insured to where it would have been had coverage been provided). Thus, the court denies Cincinnati's motion for summary judgment on this ground, and the court will stay the action pending completion of the appraisal process.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Cincinnati's motion for summary judgment (Dkt. No. 18) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** to the extent that Quick Response is ordered to comply with the appraisal provision of the policy; and

**DENIED** in all other respects; and it is further

**ORDERED** that this action is **STAYED** pending completion of the appraisal process; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 10, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge